WRIGHT, FINLAY & ZAK, LLP
Edgar C. Smith, Esq.
Nevada Bar No. 5506
Christopher Alan James Swift, Esq.
Nevada Bar No. 11291
7785 W. Sahara Avenue, Suite 200
Las Vegas, Nevada 89117
(702) 475-7964; Fax: (702) 946-1345
cswift@wrightlegal.net

BRADLEY ARANT BOULT CUMMINGS LLP
Brian A. Wahl, Esq.
Alabama Bar No. 3819-A59W
bwahl@babc.com
*Admitted Pro Hac Vice*
R. Aaron Chastain, Esq.
Alabama Bar No. 4177-C64C
achastain@babc.com
*Admitted Pro Hac Vice*
(205) 521-8000; Fax (205) 521-8800

*Attorneys for Defendant Green Tree Servicing LLC
 now known as Ditech Financial LLC*


## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| MARIA ORDONEZ f/k/a MARIA BUCKLES,<br><br>      Plaintiff,<br><br>   vs.<br><br>GREEN TREE SERVICING LLC,<br><br>      Defendant. | Case No.: 2:14-cv-01284-RCJ-(CWH)<br><br><br>**GREEN TREE SERVICING LLC NOW KNOWN AS DITECH FINANCIAL LLC'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** |

Defendant GREEN TREE SERVICING LLC now known as Ditech Financial LLC ("Green Tree") hereby submits this reply brief in support of its Motion for Summary Judgment (Doc. 67).

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

No matter how she attempts to spin it, Plaintiff Maria Ordonez lacks any meritorious claim arising out of Green Tree's actions with respect to her mortgage.  To recap briefly, her claims all arise out of these undisputed facts:

1. Green Tree offered Ms. Ordonez a modification for her mortgage, even though she had repeatedly defaulted on payments in the past and received a bankruptcy discharge from the mortgage debt;

2. Green Tree delayed implementation of the modification, first to make sure Ms. Ordonez was eligible for the modification, then to make sure she received an additional $11,669.58 reduction in forbearance owed on the lien;

3. While Green Tree was working to implement the loan modification, its automatic system sent Ms. Ordonez two letters showing the balance for her account on an unmodified basis; and

4. Shortly after she received those letters, and even after Green Tree's expressly urged Ms. Ordonez's representative to continue making payments, Ms. Ordonez stopped making any payments altogether.

On those facts, she has no viable claim, and summary judgment should be entered in Green Tree's favor.

First, Ms. Ordonez's arguments in support of her Fair Debt Collection Practices Act ("FDCPA") claim are just so much whistling past the graveyard.  In responding to Green Tree's point that she never owed Green Tree a "debt" that could have been collected in order to support an FDCPA claim, Ms. Ordonez claims that Green Tree was a "debt collector" because it acquired the servicing rights to her loan after she went into default.  But that argument merely

begs the question.  If Ms. Ordonez had no personal obligation to pay money—*i.e.*, no "debt," as the term is defined by the statute, then Green Tree could not have possibly been a "debt collector" with regard to her mortgage account when it acquired servicing rights.  Ms. Ordonez offers no meaningful response to the on-point cases Green Tree cited in its brief, and summary judgment should be granted on that basis alone.

Furthermore, Ms. Ordonez cannot possibly have an FDCPA claim against Green Tree because if Green Tree did somehow try to collect a "debt" from her, such a claim would be precluded by the bankruptcy code under binding Ninth Circuit law.  As this Court has recognized, a mortgagor whose mortgage debt is discharged in chapter 7 bankruptcy cannot bring an FDCPA claim based on an attempt to collect the discharged debt.  Allowing a mortgagor to bring that claim would conflict with the exclusive manner for bringing a claim related to a discharged debt.

In any case, even if Ms. Ordonez did have a "debt" that could support an FDCPA claim, Green Tree did not make any effort to collect that debt.  Instead, it began its communications to her with an all-caps, bold disclaimer stating that it was not attempting to collect any debt that had been discharged in bankruptcy.  The very language that Ms. Ordonez points to as supposed "evidence" that Green Tree's post-bankruptcy account status letters were meant collect a debt **are specifically required to be in the post-discharge periodic statements under regulations promulgated by the Consumer Financial Protection Bureau ("CFPB"), the agency charged with interpreting and administrative enforcement of the FDCPA**.  In fact, many courts have rejected Ms. Ordonez's argument that the language transforms a post-discharge monthly statement into an impermissible attempt to collect a debt; this Court should do the same.

Ms. Ordonez's other claims fare no better.  Her breach-of-contract claim fails because she cannot show any way that Green Tree breached the agreement, or that she suffered any damages as a result.  The internal Green Tree discussions about problems implementing the modification that Ms. Ordonez points to as evidence of Green Tree's breach are a red herring:

Ms. Ordonez knew nothing of any of those communications until long after she had failed to uphold her end of the contract.  All Ms. Ordonez knew about the status of the loan modification's implementation came from telephone conversations with Green Tree in which Green Tree's employee expressly instructed her to continue making payments and assured her the loan modification would be implemented.  Even more to the point, Ms. Ordonez's representative stated that he understood those instructions.  As a result, her breach of contract claim fails.[1]

Finally, the Court should grant summary judgment in favor of Green Tree as to Ms. Ordonez's claim under the Nevada Deceptive Trade Practices Act ("NDTPA").  In essence, Ms. Ordonez claims that Green Tree violated the NDTPA by falsely informing her that she owed several thousand more to bring her account current after she executed her loan modification.  First of all, Ms. Ordonez cannot prove the *sine qua non* of a claim for fraud—that she reasonably relied on the alleged misrepresentation, or was otherwise induced to take some other act.   Given that Green Tree expressly instructed Ms. Ordonez's representative to continue making the monthly payments and to set the allegedly false communication to the side, she cannot credibly contend that she reasonably relied to her detriment when she stopped making payments.  Nor can she point to any evidence that Green Tree intended her to do so—even aside from the specific instruction to her representative to continue making payments, the idea that Green Tree would tell her to stop sending it money is absurd.  Finally, Ms. Ordonez's only claimed damages for the alleged fraud are forms of emotional distress—yet under well-established Nevada law, such damages are not available for a claim for an allegedly fraudulent misrepresentation.

---

[1] Ms. Ordonez has not responded to Green Tree's arguments as to why summary judgment should be granted in Green Tree's favor as to her claims for breach of the covenant of good faith and fair dealing, declaratory judgment, and waiver and estoppel.

<u>**ARGUMENT**</u>

**I.    The Court should grant summary judgment against Ms. Ordonez on her FDCPA claim.**

The fundamental problem with Ms. Ordonez's FDCPA claim is that she never had a "debt" (as the term is defined by the statute) that Green Tree could have attempted to collect. Before Green Tree became the servicer for her mortgage account, Ms. Ordonez received a discharge from bankruptcy; as a result, she had no personal obligation to pay any money to Green Tree or anyone else in connection with her mortgage loan.  Instead, Green Tree received servicing rights to a security interest that survived the bankruptcy, and used those rights as the basis for offering Ms. Ordonez a loan modification.  Accordingly, she has no claim for a violation of a debt collection statute.

Moreover, even if Ms. Ordonez had a "debt," Green Tree did not attempt to collect it in its November and December 2013 and August 2014 letters.  The November and December 2013 letters began with an all-caps, bold text statement that Green Tree was not trying to collect any debt discharged in bankruptcy.  Moreover, the very text that Ms. Ordonez points to as evidencing efforts at debt collection **<u>was required to be a part of the notices sent per the CFPB's</u> <u>regulations</u>**.  Similarly, despite Ms. Ordonez's *ipse dixit* declaration that the August 2014 letter was sent in an effort to collect a debt and not for the purposes of foreclosing on the security interest, the contents of that letter are specifically required to be sent to a mortgagor pre-foreclosure under binding Nevada law.  Because each of those communications began with an unmistakable statement that they were not efforts to collect Ms. Ordonez's (nonexistent) debt, and because each contained language specifically required by law, they were not communications sent in connection with an effort to collect a debt, and Ms. Ordonez's FDCPA claim fails for that additional reason.

**A.      Ms. Ordonez had no personal obligation to pay her mortgage loan and thus did not have a "debt" under the FDCPA.**

Ms. Ordonez did not owe a "debt" that would support a FDCPA claim while Green Tree was the servicer of her mortgage because she had no "obligation . . . to pay money" as a result of her discharge from bankruptcy.  15 U.S.C. § 1692a(5).  As the Ninth Circuit has explained, a bankruptcy discharge "eliminates the creditor's ability to proceed *in personam* against the debtor whether the debt is secured or unsecured," but "the creditor retains the ability to foreclose on the property . . . ."  *In re Blendheim*, 803 F.3d 477, 486 (9th Cir. 2015).  Indeed, Ms. Ordonez expressly recognized that she was not personally liable for the mortgage debt.  *See* M. Ordonez Depo. (Doc. 67-2) at 42:22-43:7.

Based on the absence of a personal obligation to pay, courts have expressly held that a loan that has been discharged in bankruptcy is no longer a "debt" for the purposes of the FDCPA.  For example, in *Shaw v. Bank of America, N.A.*, No. 10-CV-11021, 2015 WL 224666 (D. Mass. Jan. 15, 2015), the plaintiff brought a claim under the FDCPA against the servicer of her mortgage, alleging that it had engaged in unfair or unconscionable means in attempting to collect a debt by foreclosing on the secured property and denying her a loan modification after her discharge from bankruptcy.  After reasoning that the defendant could potentially qualify as a "debt collector" because it became the servicer of the loan after it went into default, the court nonetheless granted judgment for the defendant because the plaintiff failed to show that there was a "debt" in light of her bankruptcy discharge.  *See id.* at *6.  The court noted that the FDCPA defines a "debt" as an "obligation of a consumer to pay money"—yet the plaintiff was "not liable for any deficiency" resulting from a shortfall at the foreclosure due to her bankruptcy discharge.  *Id.*

Similarly, in *Kenney v. CitiMortgage, Inc.*, No. 14-52436-JAR, 2015 WL 1957880, at *4-*5 (D. Kan. April 29, 2015), the plaintiff received a Chapter 7 bankruptcy discharge before the defendant engaged in the alleged debt collection activity and allegedly violated the FDCPA.

Because there was no personal debt left for the alleged debt collector to enforce, the court concluded that the defendant was not acting as a debt collector, but merely to enforce a security interest, and dismissed the FDCPA claim. *Id.* at *5. *Accord, e.g.*, *Arruda v. Sears, Roebuck & Co.*, 310 F.3d 13, 23-24 (1st Cir. 2002) (stating that "[t]he FDCPA's definition of a debt is broad, but it requires at least the existence or alleged existence of an obligation to pay money" and that it would "contradict the plain language" of the statute if a discharged debt satisfied the requirements of the FCDPA); *Ballard v. Bank of Am., N.A.,* No. 12-cv-2496, 2013 WL 5963068, at *11 (S.D. W. Va. Nov. 7, 2013) ("[U]nder the F[DCPA] . . . the option to pay money to retain collateral is not equivalent to a personal obligation to repay a discharged debt"), *aff'd*, 578 F. App'x 226 (4th Cir. 2014), *cert. denied*, 135 S. Ct. 1416 (2015); *Sullivan v. Ocwen Loan Serv., LLC*, No. 08-cv-2079, 2009 WL 2140075, at *1 (D. Colo. July 14, 2009) (holding defendant was not a "debt collector" under the FDCPA when collecting payments from consumer who was discharged in bankruptcy).

In her eighteen pages of argument about her FDCPA claims, Ms. Ordonez spends a mere two paragraphs (Doc. 70 at 9-10) discussing the fatal problem with her case posed by her bankruptcy discharge. Her efforts to bury that problem are revealing. In the first of those two paragraphs, Ms. Ordonez attempts to distinguish *Shaw* and *Kenney* on the basis that the alleged debt collectors in those cases were taking actions to foreclose on property (instead of merely following CFPB regulations about sending monthly statements to borrowers who have received a bankruptcy discharge, as Green Tree was here). But that is a distinction without a difference. The *Shaw* court and *Kenney* court's express reasoning in each case was that a bankruptcy discharge removed the debtor's personal liability for the mortgage debt—and thus **whatever** actions the alleged debt collector took on the account, those actions could not be a form of debt collection.

The bankruptcy bar also comports with federal binding law as articulated by the Ninth Circuit. Under binding Ninth Circuit law, a debtor who has received a discharge from Chapter 7

bankruptcy has only one recourse for a creditor's impermissible efforts to collect a discharged debt—a motion for sanctions in the bankruptcy court for violation of a discharge injunction pursuant to 11 U.S.C. § 105(a). *See Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 510 (9th Cir. 2002); *accord, e.g.*, *Berkowitz v. Bayview Loan Servicing, LLC*, No. 2:13-CV-00759, 2014 WL 3734370, at *2-*3 (D. Nev. July 25, 2014) (applying *Wall* in dismissing FDCPA claim as precluded by available cause of action under bankruptcy code). In *Walls*, the Ninth Circuit held that allowing a discharged debtor to pursue a "simultaneous claim under the [FDCPA]" for impermissibly attempting to collect a discharged debt "would circumvent the Bankruptcy Code's remedial scheme," and thus any such FDCPA claim is precluded. *Walls*, 276 F.3d at 510-11.

Here, Ms. Ordonez seeks to avoid the bar of the *Walls* decision by bringing an FDCPA claim based on communications allegedly sent as part of an effort to collect a discharged debt. Such a tactic is simply not permitted by the FDCPA or binding Ninth Circuit law. Because she had no personal obligation to pay money to Green Tree, she did not have a debt that could support a claim under the FDCPA. Accordingly, summary judgment should be granted in favor of Green Tree.

**B.    Green Tree's communications were not attempts at debt collection.**

Even if Ms. Ordonez had some sort of debt that could have been collected, Green Tree's communications at issue were not efforts at debt collection. Green Tree was required by law to send the account informational statements to Ms. Ordonez. Each of those letters expressly stated at the top (in all-caps, bold text) that the letter "IS NOT A BILL," and that "Green Tree is not attempting any act to collect or recover the discharged debt as your personal liability." Furthermore, the August 2014 letter also began with the express statement that it was an "INFORMATIONAL NOTICE" and "NOT AN ATTEMPT TO COLLECT A DEBT." On those facts, even if Ms. Ordonez had any "debt" that could be collected, she could not recover under the FDCPA because Green Tree was expressly **not** attempting to collect on the debt.

As several courts have recognized, informational letters sent to borrowers are not efforts to collect a debt that can give rise to liability under the FDCPA.[2]  Moreover, courts have specifically held that letters containing express statements that the communication is not an effort to collect a debt discharged in bankruptcy do not constitute efforts to collect a debt and thus cannot support liability under the FDCPA.  For example, in *Redjai v. Nationstar Mortg. LLC,* No. SA-CV 14-01626, 2014 WL 7238355, at *3 n.1 (C.D. Cal. Dec. 15, 2014), the court noted that a letter alone would not support FDCPA violation where the letter stated that if the plaintiff was in bankruptcy or had received a discharge in bankruptcy, the letter was not an attempt to collect a debt.  Similarly, in *Arruda v. Sears, Roebuck & Co.*, 310 F.3d 13, 23-24 (1st Cir. 2002), the U.S. Court of Appeals for the First Circuit affirmed the dismissal of the plaintiff's FDCPA claim after concluding that the defendants had not attempted to collect a debt when they sent post-bankruptcy-discharge letters to the plaintiff discussing the terms under which the plaintiffs could avoid a foreclosure of the defendant's security interest.

Here, there is no reasonable dispute that the letters Green Tree sent were not efforts to collect Ms. Ordonez's nonexistent debt.  Instead, the letters sent in November and December 2013 began by **expressly** stating that they were not efforts at debt collection in light of Ms.

---

[2] *See, e.g.*, *Bailey v. Sec. Nat'l Serv. Corp.*, 154 F.3d 384, 388-89 (7th Cir. 1998) (affirming dismissal of FDCPA claim, holding that letter that "does not 'demand' any payment whatsoever, but merely informs [plaintiffs] about the 'current status' of their account," was not a communication sent in connection with the collection of a debt); *Olson v. Midland Funding, LLC,* No. 13-cv-1882, 2013 WL 6717480, at *5 (D. Md. Dec. 18, 2013) (in dismissing Plaintiff's FDCPA claim, determining that the communication at issue was not an attempt to collect a debt based upon the contents of that communication); *Estep v. Manley Deas Kochalski, LLC,* 942 F. Supp. 2d 758, 764 (S.D. Ohio 2013) (dismissing claim that letter sent pursuant to HUD regulations violated the FDCPA because "no language in the letter sent by defendant suggest[s] that its purpose was to collect on the debt owed by plaintiffs."); *Porter v. Fairbanks Capital Corp.,* No. 01-cv-9106, 2003 WL 21210115, at *3 (N.D. Ill. May 21, 2003) (noting that courts must focus on the content of the allegedly offending communication, not the defendant's course of conduct, when determining whether a communication is an attempt to collect a debt).

Ordonez's Chapter 7 bankruptcy discharge.  The letters sent in November and December 2013 began with the statement (with the all-capitalized and bold text included below):

> **THIS IS NOT A BILL.  THIS STATEMENT IS FOR INFORMATIONAL PURPOSES ONLY.**  If you were an obligor on this account prior to the filing of a Chapter 7 bankruptcy, and you have received a discharge, and if the debt was not reaffirmed in the bankruptcy case, Green Tree is exercising only its rights under the security agreement as allowed by law.  Green Tree is not attempting any act to collect or recover the discharged debt as your personal liability.

Ms. Ordonez argues that, notwithstanding the bold, all-caps text at the top of the letter (which she quickly skips over in her argument), the November and December 2013 letters were efforts to collect a debt because they contained language such as "NEXT DUE DATE" and "Total Amount Due," as well as information about the possibility of a late charge.  Doc. 70 at 11-12.  The problem with this argument is that those exact terms **are required by the CFPB to be on the periodic statements sent by a lienholder to a borrower who has received a discharge in bankruptcy**.  The CFPB's official commentary to 12 C.F.R. § 1026, Supp. I (*available at* 2014 WL 2195855) directs mortgage servicers to "resume sending periodic statements" to mortgagors "within a reasonably prompt time after . . .  the consumer receives a discharge under 11 U.S.C. 727."  Moreover, 12 C.F.R. § 1026.41(d) specifically instructs servicers as to what has to be included in those periodic statements:

- "Amount due" (12 C.F.R. § 1026.41(d)(1))
- "The payment due date" (12 C.F.R § 1026.41(d)(1)(i))
- "Delinquency information," including "[t]he date on which the consumer became delinquent," "[a] notification of possible risks, such as foreclosure, and expenses, that may be incurred if the delinquency is not cured," and "[t]he total payment amount needed to bring the account current. (12 C.F.R. § 1026.41(d)(8))

In fact, the CFPB specifically instructs mortgage servicers to model their post-bankruptcy-discharge periodic statements on its Sample Form Appendix H-30, which contains those exact

terms.  *See* Appendix H to 12 C.F.R. Part 1026, *available at*

*http://www.consumerfinance.gov/eregulations/1026-H/2013-22752_20140118#1026-H-1.*

In essence, Ms. Ordonez argues that a servicer must choose which law to violate—the FDCPA (by sending a communication in connection with the collection of a debt discharged in bankruptcy) or the CFPB's express regulations governing periodic statements sent to a discharged mortgagor.  That position is absurd, particularly given that the CFPB is also charged with interpretation of the FDCPA.  The bottom line is that Green Tree cannot have engaged in debt collection by sending letters that (1) began with a bold, all-caps statement that it was not seeking to collect a debt discharged in bankruptcy, and (2) contained certain language such as "amount due" and information about a late charge that is expressly required by regulations to be in the notices.

Ms. Ordonez's arguments about the August 2014 letter fare no better.  The August 2014 letter stated (again in all-capitals and bold text):

**THIS INFORMATIONAL NOTICE IS NOT AN ATTEMPT TO COLLECT A DEBT.  IF YOU ARE CURRENTLY IN BANKRUPTCY OR YOUR ACCOUNT WAS DISCHARGED IN BANKRUPTCY WITHOUT A REAFFIRMATION, THE SERVICER IS NOT ATTEMPTING TO COLLECT OR RECOVER THE DEBT AS YOUR PERSONAL LIABILITY.**

Doc. 66-14.  The first paragraph of text following the address further explained the reason for the notice: "You are receiving this notice because your mortgage is in default, and your property will be referred to foreclosure in the near future."  Green Tree sent the notice to Ms. Ordonez because it was required to do so in order to proceed with enforcement of its security interest on the property through a foreclosure.  And as this Court and scores of others have recognized, the enforcement of a security interest is not an effort at debt collection for the purposes of the FDCPA.  *See Smith v. Community Lending, Inc.*, 773 F. Supp. 2d 941, 944 (D. Nev. 2011).[3]

---

[3] *Accord, e.g.*, *Dunavant v. Sirote & Permutt, P.C.*, 603 F. App'x 737, 739 (11th Cir. 2015) ("[A]n enforcer of a security interest, such as a mortgage company foreclosing on mortgages of real

Ms. Ordonez's *ipse dixit* declaration that the letter was sent by Green Tree in its "debt collector and not as a mere servicer of the loan" (Doc. 70 at 18) is demonstrably wrong.  In fact, **Green Tree was required to send the August 2014 letter by Nevada law in order to move forward with enforcement of its security interest through foreclosure**.  Pursuant to Section 10 of the Nevada Homeowners' Bill of Rights, S.B. 321 (codified at NRS 107.500), "[a]t least 30 calendar days before recording a notice of default and election to sale . . . the mortgage servicer . . . shall mail . . . a notice addressed to the borrower at the borrower's primary address . . . .which contains:

> (b)(1) The total amount of payment necessary to cure the default and reinstate the residential mortgage loan or to bring the residential mortgage loan into current status;
>
> (2)  The amount of the principal obligation under the residential mortgage loan;
>
> (3)  The date through which the borrower's obligation under the residential mortgage loan is paid;
>
> (4)  The date of the last payment by the borrower;
>
>  . . .

---

property[,] falls outside the ambit of the FDCPA."); *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985); *Long v. Nat'l Default Serv. Corp.*, No. 3:09-cv-77-RCJ-VPC, 2010 WL 3199933, at *3-*4 (D. Nev. Aug. 11, 2010); *Odinma v. Aurora Loan Servs.*, No. C–09–4674–EDL, 2010 WL 2232169, at *11–12 (N.D. Cal. June 3, 2010) (collecting cases); *Siegel v. Deutsche Bank Nat'l Trust Co.*, No. 08-cv-517, 2009 WL 3254491 (D. Neb. Oct. 8, 2009) (recognizing that security interest enforcement activities fall outside the scope of the FDCPA), *aff'd*, 409 F. App'x 975 (10th Cir. 2011); *Gray v. Four Oak Court Ass'n*, 580 F. Supp. 2d 883, 887 (D. Minn. 2008) ("[T]he statute's definition of a 'debt collector' clearly reflects Congress's intent to distinguish between 'the collection of any debts' and 'the enforcement of security interests.'"); *Chomilo v. Shapiro, Nordmeyer, & Zielke, LLP*, No. 06-cv-3103, 2007 WL 2695795 (D. Minn. Sept. 12, 2007) (same); *Cohen v. Beachside Two-I Homeowners' Ass'n*, No. 05-cv-706, 2005 WL 3088361, at *14 (D. Minn. Nov. 17, 2005) (holding that letter confirming mortgagee would settle the lien amount did not constitute a violation of FDCPA); *Rosado v. Taylor*, 324 F. Supp. 2d 917, 924 (N.D. Ind. 2004) ("Security enforcement activities fall outside the scope of the FDCPA [other than section 1692f(6)] because they aren't debt collection practices.").

(8)  A description of any late payment fee charged under the residential mortgage loan;

. . .

(d)  A statement of the foreclosure prevention alternatives offered by, or through, the mortgage servicer, mortgagee or beneficiary of the deed of trust.

In other words, Green Tree's letter followed the exact requirements of Nevada state law for a mortgage seeking to enforce a security interest.  And as Ms. Ordonez admits elsewhere in her brief, courts have held that a loan servicer's communications <u>expressly required in order to conduct a foreclosure under state law</u> are part of enforcement of a security interest—not attempts to collect a debt.  *See* Doc. 70 at 15 (citing *Lohse v. Nationstar Mortg.*, No. 14-CV-00514-JCS, 2014 U.S. Dist. LEXIS 148858, at *22 (N.D. Cal. Oct. 20, 2014) ("persons who regularly or principally engage in communications with debtors concerning their default that go beyond the statutorily mandated communications required for foreclosure may be considered debt collectors") (emphasis added)); *accord, e.g.*, *Natividad v. Wells Fargo Bank, N.A.*, No. 3:12–cv–03646 JSC, 2013 WL 2299601, at *9 (N.D. Cal. May 24, 2013).

No matter how she tries to spin it, Ms. Ordonez simply cannot prevail on her FDCPA claim because she never owed a "debt" to Green Tree, or a "debt" that was serviced by Green Tree.  Ms. Ordonez had no personal liability on her mortgage loan by the time Green Tree came into the picture.  Accordingly, Green Tree was not a "debt collector" in any sense when it modified the terms of her mortgage and implemented the $12,000 reduction of the forbearance she owed on the balance.

II.   **The Court should grant Green Tree summary judgment on Ms. Ordonez's claim for breach of contract.**

Ms. Ordonez's breach-of-contract claim is flawed from start to finish.  Her claim is essentially that Green Tree harmed her when it had internal problems implementing her loan modification due to her previous loan modification with a different bank (which she defaulted on) and due to Green Tree's efforts to make sure she received an additional $12,000 reduction in the forbearance owed on the mortgage lien.  But Ms. Ordonez has failed to identify any evidence

that Green Tree breached the terms of the September 2013 Loan Modification.  In fact, her breach-of-contract claim is the ultimate example that no good deed goes unpunished.  In the course of implementing Ms. Ordonez's loan modification, Green Tree realized (1) that Ms. Ordonez had previously received (and subsequently defaulted) on a HAMP loan modification with a different servicer, and (2) recognized that the amount of forbearance for her account should be reduced by approximately $12,000—a fact that was not documented in the Modification Agreement that she signed.  As a result of those discoveries, it took Green Tree a few extra months to fully implement the modification.  In order to make sure Ms. Ordonez got the full benefit of the forbearance reduction (which was not included in the September 2013 Modification Agreement), Green Tree decided to have the modification re-documented.  But Green Tree **never** informed Ms. Ordonez in any way that it was intending to abandon the loan modification agreement—even after she quit making monthly payments on the account after November 2013.

Ms. Ordonez makes much of an internal Green Tree communication referring to the loan modification as "canceled."  It is beyond any reasonable dispute that, whatever was meant by "canceled" as a technical matter at the time, the loan modification was never canceled, since Green Tree fully implemented it (with the $12,000 forbearance reduction) in January 2014.  **Moreover, Ms. Ordonez had no reason to think that Green Tree intended to breach the agreement when she quit making payments.**  On October 25, 2013, Ms. Ordonez's authorized representative Sanford Buckles called Green Tree and spoke to Green Tree employee Shannon Gergen.  Sparks Decl. (Doc. 67-35) Exhibit A & Recording 1.  During the phone call, Ms. Gergen explained the reason for the delay in implementation of Ms. Ordonez's modification and instructed Ms. Ordonez to "just continue to make your payment each month." Doc. 67-36 at Recording 1, page 5.  On November 18, 2013, Sanford Buckles again called Green Tree, this time to discuss the November 11, 2013 letter.  Sparks Decl. (Doc. 67-35) Exhibit A & Recording 2.  Green Tree employee Shannon Gergen explained to Mr. Buckles that the "Total Amount

14

Due" figure of $17,938.98 was "what the account sits at as if it's not modified," and instructed

him to "set th[at] to the side" and "continue making trial payments." Doc. 67-36 at Recording 2,

page 3.

Although she doesn't use the terms, Ms. Ordonez's argument appears to be that Green

Tree anticipatorily repudiated the contract embodied in the Modification Agreement, thus

justifying her decision to quit making monthly payments. Under Nevada law, "[a] contractual

anticipatory repudiation must be clear, positive, and unequivocal." *Covington Bros. v. Valley

Plastering, Inc.*, 566 P.2d 814, 817, 93 Nev. 355, 360 (1977); *accord, e.g.*, *Stratosphere

Litigation, LLC v. Grand Casinos*, 298 F.3d 1137, 1147 (9th Cir. 2002); *Cleverley v. Ballantyne*,

No. 2:12-cv-00444-GMN-GWF, 2013 WL 6670554, at *4 (D. Nev. Dec. 17, 2013). Here, Green

Tree's supposed repudiation was nothing of the sort. In its only direct communications with Ms.

Ordonez's representative, Green Tree's employee expressly informed him that Green Tree would

be implementing the loan modification, and urged Ms. Ordonez to continue making the monthly

payments. Rather than a "clear, positive, and unequivocal" repudiation, Green Tree made a

"clear, positive, and unequivocal" **reaffirmation** of the contract.

Ms. Ordonez also argues that she had no obligation to work with Green Tree in re-

executing the Modification Agreement to include the additional reduction in forbearance on the

account. *See* Doc. 70 at 27. That argument has no merit whatsoever under the plain language of

the very modification agreement Ms. Ordonez purports to want to enforce. As Green Tree

explained in its motion for summary judgment, the September 2013 Modification Agreement

executed by Ms. Ordonez contained a paragraph explaining her obligations to provide or re-

execute additional documents needed for the implementation of the modification. Specifically,

Paragraph K stated:

> [I agree to the following]
>
> That I will execute such other document as may be reasonably necessary to either
> (i) consummate the terms and conditions of this Agreement; (ii) **correct the terms
> and conditions of this Plan if an error is detected after execution of this
> Agreement**. I understand that a corrected Agreement will be provided to me and

15

> this Agreement will be void and of no legal effect upon notice of such error.  If I elect not to sign any such corrected Agreement, the terms of the original Loan Documents shall continue in full force and effect; such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification Program.

Doc. 67-34 at 2 (emphasis added).  Similarly, Paragraph N states:

> I agree that if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, **I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary**.

Doc. 67-34 at 3 (emphasis added).  By refusing to follow the very terms of the contract she claims she wants to enforce, Ms. Ordonez undermines her breach of contract claim.

In any case, Ms. Ordonez's breach-of-contract claim fails because she cannot demonstrate she suffered any damages.  Green Tree tried repeatedly to implement the loan modification even after Ms. Ordonez quit making her monthly payments, but Ms. Ordonez refused to cooperate.  To this day, Green Tree stands ready to honor the terms of the modification so Ms. Ordonez can avoid a foreclosure on her property.  Ms. Ordonez's claim that she has "consistently expressed her wish for [Green Tree] to simply honor the [Modification Agreement], something [Green Tree] refuses to do" (Doc. 70 at 27) is a complete farce: Ms. Ordonez demonstrated that she had no intent to honor the Modification Agreement herself when she quit making payments on the property over seventeen months ago.  For that additional and independent reason, the Court should grant summary judgment for Green Tree on the breach-of-contract claim.

## III.     The Court should grant summary judgment for Green Tree on the NDTPA claim.

Ms. Ordonez also has failed to show that there are any genuine issues of material fact that would preclude entry of summary judgment in favor of Green Tree as to her claim for violation of the Nevada Deceptive Trade Practices Act claim.  As an initial matter, in discussing that claim Ms. Ordonez again shows a fundamental misunderstanding of the summary judgment standard. Green Tree had no obligation to discuss the facts that its actions were neither deceptive nor

fraudulent—that will be Ms. Ordonez's burden at trial, and a burden she would not be able to meet, given that the statements accurately showed the then-unmodified balance for her loan account.

In any case, Ms. Ordonez's NDTPA claim fails for three other independent reasons. First of all, Ms. Ordonez cannot point to any evidence that the supposedly false statements were intentional. In order for her claim to survive summary judgment, Ms. Ordonez must be able to point to evidence that Green Tree made the purportedly deceptive statement with the specific intent "to induce [Ms. Ordonez] to act or to refrain from acting in reliance on the misrepresentation." *Bulbman, Inc. v. Nevada Bell*, 108 Nev. 105, 110, 825 P.2d 588, 592 (1992). But here, there is no reasonable dispute that Green Tree lacked any intent to deceive Ms. Ordonez into paying more than she owed under the Modification Agreement, given that Green Tree's employee expressly instructed her representative to set the allegedly deceptive communication to the side and continue making monthly payments.

Second, Ms. Ordonez fails to point to any evidence that she reasonably relied on Green Tree's allegedly deceptive communications. *See Sattari v. CitiMortgage, Inc.*, No. 2:09-CV-00769-RLH-GWF, 2011 WL 1103403, at *4 (D. Nev. Mar. 23, 2011), *aff'd* 471 F. App'x 627 (9th Cir. 2012). At best, Ms. Ordonez offers self-serving testimony that she *believed* the statements indicating that she owed a great deal more on her mortgage account. To the extent that self-serving testimony generate a basis for opposing summary judgment, it seems particularly dubious, given that Ms. Ordonez's representative immediately contacted Green Tree about the apparently incorrect statements, and Green Tree's employee unambiguously informed him that the statements did not accurately reflect the terms of the modified loan and that he should set them to one side. But more fundamentally, that is not evidence that Ms. Ordonez **relied** on the allegedly deceptive statement. Ms. Ordonez offers no evidence that she took some action she would not have otherwise taken when she received the statement. In fact, she did the

17

**opposite** of what the statement supposedly attempted to induce her to do—rather than pay more money than she was owed, Ms. Ordonez quit making payments altogether.

That fact illustrates the absurdity of Ms. Ordonez's NDTPA claim.  A plaintiff may have a claim for fraud if it can show that a mortgage servicer sent a communication requiring payment of an additional amount above and beyond the amount actually owed, and the plaintiff then reasonably relied on such a communication by making additional payments.  But Ms. Ordonez did not do that, or anything like it.  As a result, she has no claim under the NDTPA.

Finally, and for similar reasons, Ms. Ordonez's NDTPA claim fails because she cannot point to any evidence that she suffered compensable damages as a result of the alleged deceptive communication.  Contrary to her offhand argument, this Court has noted that a claim under the NDTPA requires proof of damages, as with any claim for fraud.  *See Sattari*, 2011 WL 1103403, at *4.  But the only damages Ms. Ordonez identifies are claims for emotional distress, which are not recoverable without claims of financial harm.  Nevada follows the rule (as stated by the Restatement (Second) of Torts § 549) that a plaintiff bringing a claim for fraudulent representation may only recover damages for pecuniary or monetary losses.  *See Collins v. Burns*, 741 P.2d 819, 822, 103 Nev. 394, 398-99 (1987); *accord, e.g. Schroeder*.  Of course, Ms. Ordonez cannot even allege that she suffered any pecuniary or monetary losses as a result of Green Tree's allegedly deceptive statements—**her claim is that the statements caused her to stop making payments to Green Tree.**  Stated again, Ms. Ordonez's "damages" for fraud are her failure to pay back Green Tree the money she had promised to pay in order to avoid foreclosure on Green Tree's lien.  That claim is the height of absurdity and fails to create a genuine issue of material fact.

### CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment should be granted.

BRADLEY ARANT BOULT CUMMINGS LLP

s/ Brian A. Wahl

Brian A. Wahl, Esq.
Alabama Bar No. 3819-A59W
bwahl@babc.com
*Admitted Pro Hac Vice*
Richard Aaron Chastain, Esq.
Alabama Bar No. 4177-C64C
achastain@babc.com
*Admitted Pro Hac Vice*
**Attorneys for Defendant Green Tree
Servicing LLC now known as Ditech Financial
LLC**

**OF COUNSEL**
WRIGHT, FINLAY & ZAK, LLP
Edgar C. Smith, Esq.
Nevada Bar No. 5506
Christopher A.J. Swift, Esq.
Nevada Bar No. 11291
7785 W. Sahara Avenue, Suite 200
Las Vegas, Nevada 89117
(702) 475-7964; Fax: (702) 946-1345

19

## CERTIFICATE OF MAILING

I HEREBY CERTIFY that on May 2, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

David Krieger, Esq.
Haines & Krieger, LLC
8985 S. Eastern Avenue, Suite 130
Henderson, Nevada 89123
DavidKrieger@hainesandkrieger.com
*Attorney for Plaintiff*

Michael Kind, Esq.
Kazerouni Law Group, APC
7854 W. Sahara Avenue
Las Vegas, Nevada 89117
mkind@kazlg.com
*Attorney for Plaintiff*

Sara Khosroabadi, Esq.
Hyde & Swigart
7854 W. Sahara Avenue
Las Vegas, Nevada 89117
sara@westcoastlitigation.com
*Attorney for Plaintiff*

s/ Brian A. Wahl
Brian A. Wahl